David Bruce GILBERT, M.D.,
Plaintiff–Appellant,

v.

M. David BEN–ASHER; J. Scott Alexan-
der; James E. Brady, Jr.; W. Albert
Brewer; Douglas N. Cerf; Richard L.
Dexter; Arnold H. Dysterheft; Albert
Eckstein; Michael R. Geyser; William
B. Helme; Arthur N. Lindberg; Rich-
ard T. McDonald; Anna Margaret Os-
born; Phillip Z. Saba; Mario P. Valdez,
Defendants–Appellees.

No. 89–15019.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1990.

Decided April 16, 1990.

David Bruce Gilbert, Payson, Ariz., pro se.

Clifford J. Roth, Johnston Maynard Grant & Parker, Phoenix, Ariz., for defendants-appellees.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

PER CURIAM:

David Bruce Gilbert brought this suit against a number of persons[1] acting on behalf of the Arizona Board of Medical Examiners (BOMEX), for various claims arising out of the revocation of his license to practice medicine. Gilbert alleges violations of his federal civil rights under 42 U.S.C. §§ 1983 and 1985, intentional interference with contractual relations, intentional infliction of emotional distress, abuse of process, and defamation. The district court awarded summary judgment to BOMEX. We affirm.

I.

## FACTS AND PROCEEDINGS BELOW

For twenty-five years, Gilbert practiced medicine in the state of Arizona. On March 13, 1980, an administrative complaint was filed alleging that Gilbert lacked sufficient medical competence and that his continued practice of medicine endangered the health of his patients and the public. An administrative law judge heard evidence regarding twenty-five surgical cases involving Gilbert before entering his findings, conclusions, and recommendations on April 12, 1981. He ruled that Gilbert was markedly deficient in diagnosing and preparing patients for surgery and that his conduct constituted medical incompetency[2] and unprofessional conduct[3] as defined in Arizona Revised Statutes Annotated. He recommended that Gilbert be subjected to censure, probation, suspension of license, or revocation of license, or "any combination of these."

Following the administrative law judge's report, BOMEX reviewed Gilbert's records in executive session and heard additional allegations of misconduct by Gilbert. On September 10, 1981, BOMEX unanimously voted to suspend Gilbert's license to practice medicine pending a formal hearing. At that hearing, held on April 3, 1982, a different administrative law judge concluded that Gilbert's conduct in three additional cases lacked medical competence. He recommended that BOMEX place Gilbert on probation. A formal hearing ensued, and BOMEX revoked Gilbert's license on June 23, 1982.

1. Gilbert named as defendants in this lawsuit M. David Ben–Asher, James E. Brady, Jr., J. Scott Alexander, Richard L. Dexter, Albert Eckstein, Michael R. Geyser, William B. Helme, Arthur N. Lindberg, Anna Margaret Osborn, Phillip Z. Saba, and Mario P. Valdez, who were members of the Arizona Board of Medical Examiners at the times relevant to these proceedings. He also named as defendants W. Albert Brewer, Arnold H. Dysterheft, and Richard T. McDonald, who were employed by BOMEX as special medical examiners, and Douglas N. Cerf, who was the Executive Director of BOMEX during the relevant time periods. For convenience, we refer to appellees collectively as BOMEX.

2. As amended, Ariz.Rev.Stat.Ann. § 32–1401(13) (Supp.1989) defines "medically incompetent" as "lacking in sufficient medical knowledge or skills, or both, to a degree likely to endanger the health of patients."

3. As amended, Ariz.Rev.Stat.Ann. § 32–1401(19)(t) (Supp.1989) defines "unprofessional conduct" as including "[k]nowingly making any false or fraudulent statement, written or oral, in connection with the practice of medicine."

Gilbert failed to seek judicial review of this revocation, as permitted under sections 12–901 through 12–914 of the Arizona code. Ariz.Rev.Stat.Ann. §§ 12–901–914 (1982). This failure barred judicial review of the revocation order.[4] Nonetheless, Gilbert sought reinstatement of his license in mid-August 1985. BOMEX, in an open session meeting on September 14, 1985, concluded that Gilbert's application did not meet the relevant statutory requirements. Gilbert was informed of this decision approximately five weeks later.

Accompanied by his attorney, Jack J. Rappeport, Gilbert attended a hearing that he had requested to review the decision denying his reinstatement. On or about December 4, 1985, BOMEX turned down Gilbert's appeal, concluding that Gilbert's application for reinstatement failed to meet the requirements of Ariz.Rev.Stat.Ann. § 32–1422(A)(4) (Supp.1989)[5] because of Gilbert's convictions on felony counts for income tax evasion, his conviction on a misdemeanor count of practicing medicine without a license, and his failure to file income tax returns. On this occasion, Gilbert appealed under Ariz.Rev.Stat.Ann. § 12–904 (1982). Once more he failed to remove the obstacle to the resumption of his practice. He agreed to dismiss his objections with prejudice.

In July 1986, Gilbert applied for a medical license for the second time. After another open meeting, a formal report by BOMEX, and a hearing, at which his counsel, Rappeport, was again present, BOMEX voted 7–0 to deny Gilbert's application. It entered findings of fact and conclusions of law on November 21, 1986. Upon appellant's motion for rehearing, BOMEX held another hearing on April 9, 1987, and this time voted 10–0 (with one abstention) to deny Gilbert's application for a license.

As these administrative proceedings unfolded, Gilbert was engaged in litigation in state court against some of the appellees-defendants named in this federal action. In the state case, the district judge heard appellant's claims alleging violations of 42 U.S.C. §§ 1983 and 1985, interference with contractual relations, and intentional infliction of emotional distress. The court dismissed the federal civil rights claims with prejudice, granted the defendants' motion for summary judgment, and awarded defendants $76,665.50 in attorneys' fees, plus over $12,000 in taxable and nontaxable costs. The court also levied sanctions of $50,000 in attorneys' fees and $5,000 in nontaxable costs against Gilbert's attorney, Rappeport, for filing a "frivolous" suit. In a lengthy opinion, the Arizona Court of Appeals affirmed. *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 745 P.2d 617 (Ct.App.1987), *review denied*, Dec. 8, 1987.

While the state case was pending, Gilbert filed a similar complaint in federal court on February 21, 1984. The appeal of that suit is before us. Because of the similarity between the cases, the federal district court entered an order staying action in this case on November 20, 1984. After the resolution of the state case, appellees moved for summary judgment in this suit. The district court granted the motion on December 21, 1988. BOMEX urged the court to base its order on principles of res judicata or collateral estoppel, because the Arizona state court had already decided many of the claims and issues raised in this lawsuit. The court rejected this reasoning and reached the merits on each claim, but nevertheless granted appellees' motion for summary judgment. Gilbert appeals these rulings.

## II.

### JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 (1982) for

4. Ariz.Rev.Stat.Ann. § 12–902(B) (1982) provides that "[u]nless review is sought of an administrative decision within the time and in the manner provided in this article, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such decision."

5. This statute provides as one of the basic requirements for qualifying for a medical license: "[a] professional record which indicates that the applicant has not committed any act or engaged in any conduct which would constitute grounds for disciplinary action against a licensee under this chapter."

the federal claims alleged pursuant to 42 U.S.C. §§ 1983 and 1985 (1982) and pendent jurisdiction over the state law claims under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Our appellate jurisdiction emanates from 28 U.S.C. § 1291 (1982).

## III.

### *ANALYSIS*

We review de novo a grant of summary judgment, *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989), and may base our ruling on any grounds supported by the record, *Jackson v. Southern Calif. Gas Co.*, 881 F.2d 638, 643 (9th Cir.1989).

### A.

■ The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) serve two objectives. They limit to one the number of times a defendant can be vexed by the same claim or issue and they promote efficiency in the judicial system by putting an end to litigation. Congress has authorized the federal courts to give the same "full faith and credit" to judicial proceedings of the states "as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (1982). The Supreme Court has interpreted this provision to mean that federal courts must give such preclusive effect to state judgments as would the state courts. *See, e.g., Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

■ As a general matter, only persons who were parties to the prior action may be bound by the findings and conclusions of that action. Restatement (Second) of Judgments §§ 17, 34(3) (1982); *see generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4448–49 (1981 & Supp.1990). The claims adjudicated are precluded from being adjudicated again.

The appellees in this suit who were also defendants in the state court action may therefore invoke res judicata to bar Gilbert's claims for intentional interference with contractual relations, intentional infliction of emotional distress, and relief under sections 1983 and 1985.[6]

■ For those appellees who were not defendants in the state court action, the doctrine of collateral estoppel, defensively employed, bars Gilbert's litigation of the issues that underlie these claims. Relitigation of such issues is precluded. Under Arizona law, "a party precluded from litigating an issue under the traditional rule, is also precluded from doing so with another, provided there was full and fair opportunity to litigate the issue in the first action." *Wetzel v. Arizona State Real Estate Dep't*, 151 Ariz. 330, 333, 727 P.2d 825, 828 (Ct.App.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). "Defensive use of the doctrine occurs when a party defending a claim asserts a previous judgment to which it was not a party to preclude litigation by an opponent who was a party to the prior determination." *Id.* (citing *Food for Health Co. v. 3839 Joint Venture*, 129 Ariz. 103, 106–07, 628 P.2d 986, 990 (Ct.App.1981)).

### B.

■ These doctrines preclude Gilbert from litigating the vast majority of the claims of his case in this federal action. Both civil rights claims, for example, are precluded under Arizona law because he agreed to dismiss them with prejudice in the state lawsuit. Arizona law permits a judgment by stipulation to "be conclusive ... if the parties have entered an agreement manifesting such intention." *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986) (en banc). Moreover, it is axiomatic that a stipulation with prejudice determines the parties' rights and hence constitutes a bar to future action. *See City of Sierra Vista v. Co-*

---

6. The state court rejected these identical claims. *See* 155 Ariz. 169, 173–79, 745 P.2d 617, 622–27

(Ct.App.1987), *review denied*, Dec. 8, 1987.

*chise Enters.*, 128 Ariz. 467, 468, 626 P.2d 1099, 1100 (Ct.App.1979); Restatement (Second) of Judgments § 19 comment b(a)(1).

Gilbert is thus barred from asserting a violation of his federal civil rights. *See, e.g., Valley Wood Preserving, Inc. v. Paul,* 785 F.2d 751, 754 (9th Cir.1986) (procedural claims under section 1983 are barred by collateral estoppel because of earlier adjudication by County Board of Supervisors); *see generally Mecham v. City of Glendale,* 15 Ariz.App. 402, 404, 489 P.2d 65, 67 (Ct. App.1971), *review denied,* Nov. 30, 1971 (collateral estoppel applies to prevent litigation when "the party *against* whom the doctrine is to be invoked had full opportunity to litigate the matter and actually did litigate it, provided such issue was essential to the prior judgment"); *Krasse v. Del E. Webb Dev. Corp.,* 26 Ariz.App. 427, 429, 549 P.2d 207, 209 (Ct.App.1976), *review denied,* July 13, 1976 (applying doctrine of res judicata to bar a claim where nonparty to first action is indemnitee of defendant). By the same reasoning, Gilbert's claims for intentional interference with contractual relations and intentional infliction of emotional distress are barred because the state court decided the issues underlying these claims. *See Gilbert,* 155 Ariz. at 176–77, 745 P.2d at 625–27.

### C.

■ Arguably Gilbert's claims in this lawsuit for abuse of process and defamation are new. The abuse of process claim assails the fairness of the administrative proceeding in which his license was revoked. This claim is without merit. As the state court observed in the parallel action to this suit, this allegation "is a collateral attack on the administrative deci-sion revoking the license under the guise of a complaint sounding in tort. Dr. Gilbert can prevail on the tort claims *only* by proving that the revocation was improper. This pivotal issue has already been litigated and decided against him." 155 Ariz. at 175, 745 P.2d at 623.

■ Gilbert's defamation claims also fail. He asserts that certain statements made following the revocation of his license were defamatory.[7] Nevertheless, the issue of Gilbert's medical competence was decided against him by BOMEX. Because he failed to appeal this ruling, we must consider him incompetent. *See Gilbert,* 155 Ariz. at 174, 745 P.2d at 623. The statements to which Gilbert objects were, when made, statements of truth, albeit colorfully phrased. Truth is a defense to the alleged defamatory statement. Restatement (Second) of Torts § 581A (1977 & App.1989).

### D.

■ Appellees urge the court to award attorneys' fees under 42 U.S.C. § 1988 (1982),[8] Ariz.Rev.Stat.Ann. § 12–341.01(C) (1982),[9] and Fed.R.Civ.P. 11. To be successful on a section 1988 claim for fees, a defendant must show that the plaintiffs' action is unreasonable, frivolous, meritless, or vexatious. *Grove v. Mead School Dist. No. 354,* 753 F.2d 1528, 1534 (9th Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985). The standard is similar for the Arizona statute and Fed.R.Civ.P. 11. The district court made no such finding, and without supporting their request with any arguments or authority, appellees urge this court to make an award for fees. Although we neither find Gilbert's arguments persuasive, nor applaud his repe-

---

**7.** In an article in the *Phoenix Gazette,* March 30, 1983, appellee Douglas N. Cerf was quoted as saying: "We would have liked to put this guy up against the wall (legally) and shoot him years before we did, but our hands were legally tied." And: "He was a menace to the health and safety of the people of Arizona."

**8.** This statute provides in pertinent part:
... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**9.** This provision authorizes a court to award attorneys' fees upon a showing that the "claim or defense constitutes harassment, is groundless and not made in good faith."

titious litigation, appellees have not justified an award of fees in this case.

AFFIRMED.