SUNKIST GROWERS, INC., a California corporation, Plaintiff–Appellant,

v.

Michael S. FISHER and Meryle Fisher, Defendants–Appellees.

No. 95–15735.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1996.

Decided Jan. 6, 1997.

Karen L. Karr, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, Arizona, for plaintiff-appellant Sunkist Growers, Inc.

Marjorie F. Cunningham, Curtis & Cunningham, Tucson, Arizona, for defendants-appellees Michael S. Fisher, et al.

Before BOOCHEVER, JOHN T. NOONAN, Jr., and DAVID R. THOMPSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

This appeal involves the applicability of res judicata, or claim preclusion. The district court granted summary judgment, finding that a grower who sold fresh fruit to a juice company and obtained a state court judgment against the juice company for failure to pay in full, was barred from suing the company's sole shareholders under a federal statute providing a trust remedy against dealers who fail to pay for perishable agricultural commodities. We reverse.

## FACTS

In 1991, Sunkist Growers, Inc. ("Sunkist"), a citrus producer incorporated in California, sold fresh fruit to Quality Fresh Juice Company, Inc. ("Quality Fresh"), a produce dealer incorporated in Arizona. When Quality Fresh failed to pay Sunkist most of the money owed for the fruit, Sunkist filed suit in Arizona state court alleging breach of contract. [ER tab 11] Quality Fresh offered to confess judgment, and in July 1993 the state court entered a judgment for Sunkist in the amount of $31,500. [*Id.*]

Sunkist also filed a complaint against Quality Fresh with the Secretary of Agriculture under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq. ("PACA"). After Sunkist received the judgment in the state court case, it wrote the Agriculture Department authorizing the dismissal of the administrative complaint. In January 1994, the department dismissed the complaint.

Quality Fresh went out of business and never satisfied the state court judgment. In April 1994, Sunkist filed a complaint in federal district court against Michael S. Fisher and Meryle Fisher ("the Fishers"). The complaint alleged that the Fishers were officers, directors, and sole shareholders of Quality Fresh and controlled its operations. [ER tab 1 p. 2] Under PACA, Sunkist claimed it was the beneficiary of a trust requiring Quality Fresh to hold its assets to pay Sunkist, and that the Fishers, as fiduciaries, had breached their duties to maintain the trust assets and pay Sunkist. [*Id.* pp. 3–4] The complaint asked for enforcement of the PACA trust by payment by the Fishers of the $31,500 owed by Quality Fresh.

The Fishers answered that the fruit was not suitable for juice. [CR 3] The Fishers also claimed "[t]hat the factual basis of this claim was previously raised in a cause of action in the Superior Court of the State of Arizona, and Defendants are now collaterally estopped from bringing a new cause of action on the same facts," invoking res judicata and collateral estoppel.

Sunkist filed for partial summary judgment on the collateral estoppel and res judi-

cata issues, and submitted the Arizona state court judgment. [ER tab 11] The district court granted judgment for the Fishers, finding that the Arizona state court judgment was res judicata under federal law, precluding Sunkist's federal suit under PACA. After denial of its motion for reconsideration, Sunkist appealed.

## DISCUSSION

Enacted in 1930, PACA had the intent of "preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry." *Farley and Calfee, Inc. v. United States Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir.1991). PACA requires all brokers and dealers in perishable agricultural commodities to obtain licenses from the Secretary of Agriculture. *Id.*; 7 U.S.C. §§ 499c, 499d. Dealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce. 7 U.S.C. § 499b(4).

> Such liability may be enforced either (1) by complaint to the Secretary ... or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies.

*Id.* at § 499e(b).

Congress amended the statute in 1984 to add an additional remedy: the perishable commodities or proceeds from the sale of those commodities are held in trust by the dealer for the benefit of the unpaid seller until full payment is made. *Id.* at § 499e(c)(2). Ordinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt. *See In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996).

> Although the use of a trust under the Act was aimed at remedying problems created by buyers' bankruptcies, the trust was also envisioned as a method of enforcing debts against solvent buyers. In fact, by operation of § 499e(c)(2), a statutory trust in a defined *res* is created whenever a seller or supplier of perishable agricul-

tural products provides such products to a commission merchant, dealer, or broker on credit. If the seller gives timely notice of its intent to preserve its benefits under the trust, the buyer must conduct itself as trustee of its assets until the seller is paid in full.

*JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 77–78 (2d Cir.1990) (citations omitted).

Once the unpaid supplier has given written notice to the Secretary of its intent to preserve the trust benefits, 7 U.S.C. § 499e(c)(3), a trust action may be brought in federal court: "The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." *Id.* § 499e(c)(5).

Sunkist complied with PACA's requirement that it timely file a notice of its intent to preserve the trust benefits. *See id.* § 499e(c)(3). Sunkist then brought an action in state court against Quality Fresh on a contract theory, a remedy available at common law that is expressly preserved by section 499e(b) of the statute. When the corporation failed to satisfy the judgment, Sunkist turned to PACA and sued the Fishers as individuals in federal court on the trust theory created by 7 U.S.C. § 499e(c)(2). Nevertheless, the district court granted summary judgment, finding "we must follow [federal] law and dismiss this matter even though the result does not appear to be equitable—the defendants had the benefit of goods tendered and received without ever making payment— [because] the judgment entered by the [Arizona] court is res judicata to the instant claims." [ER tab 20 p. 6]

### I. Individual liability under PACA

Several district courts have concluded that individuals associated with corporate defendants may be liable under a PACA trust theory.

> Anyone found to be a PACA "dealer" is subject to liability under PACA section 499b, which makes unlawful unfair conduct

including the failure to maintain a statutory trust.... If deemed a PACA "dealer," an individual is liable for his own acts, omissions, or failures while acting for or employed by any other dealer. 7 U.S.C. § 499e(a).

*Frio Ice v. SunFruit, Inc.,* 724 F.Supp. 1373, 1381–82 (S.D.Fla.1989) (footnote and citation omitted), *rev'd on other grounds,* 918 F.2d 154 (11th Cir.1990). A court considering the liability of the individual may look at "the closely-held nature of the corporation, the individual's active management role" and any evidence of the individual's acting for the corporation. *Id.* at 1382.

> An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act.... [A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier.

*Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 348 (S.D.N.Y.1993). *See Bronia, Inc., v. Ho,* 873 F.Supp. 854, 861 (S.D.N.Y.1995) (sole shareholder, director, and president of corporation personally liable for corporation's breach of PACA trust under *Morris Okun* ); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 211 (E.D.N.Y.1993) ("an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the [PACA] trust is personally liable to the beneficiaries for that loss"); *In re Zois,* 201 B.R. 501, 507 (Bankr. N.D.Ill.1996) ("Courts have generally imparted individual responsibility for breaches of PACA while individuals were in the employ or an officer of a corporation."); *In re Snyder,* 184 B.R. 473, 475 (D.Md.1995) (PACA trust imposes liability on controlling person of corporation for use of trust assets for any purpose other than repayment, quoting *Okun* ).

The unanimous conclusion of the cases is that "PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Shepard v. K.B. Fruit & Vegetable, Inc.,* 868 F.Supp. 703, 706 (E.D.Pa.1994).

We agree that individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.

## II. *Res judicata*

This court reviews de novo the trial court's grant of summary judgment on the grounds of res judicata. *International Union of Operating Eng'rs–Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir.1993).

The parties argue, and the district court applied, the federal law of res judicata and collateral estoppel. But "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires us to give the same preclusive effect to a state-court judgment as another court of that State would give." *International Evangelical Church v. Church of the Soldiers,* 54 F.3d 587, 590 (9th Cir.1995) (quotations omitted). We therefore look to the law of the state of Arizona to determine the res judicata effect of the judgment in the state contract action. *Gilbert v. Ben–Asher,* 900 F.2d 1407, 1410 (9th Cir.), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990).

"Under Arizona law, a final judgment on the merits absolutely bars a subsequent suit involving the same cause of action." *Piatt v. MacDougall,* 773 F.2d 1032, 1034 (9th Cir.1985) (en banc). To test whether two lawsuits present the same cause of action, Arizona law asks "whether proof of the claims in the two cases depends upon the same evidentiary facts." *Ross v. International Bhd. of Elec. Workers,* 634 F.2d 453, 458 (9th Cir.1980). Courts look at the facts as alleged in the pleadings and as contained in the evidence, to see whether the two cases require proof of additional or different facts. *Heywood v. Samaritan Health Sys.,* 902 F.Supp. 1076, 1080 (D.Ariz.1995) (citing Arizona cases).

■ The federal PACA claim did require proof of additional and different facts from the state contract action. In the state-court action, Sunkist named only Quality Fresh and alleged simply that Quality Fresh became indebted to Sunkist by contract and paid only part of the debt, thus breaching the contract. [ER tab 14 p. 2] The PACA complaint in federal court, by contrast, named only the Fishers, and alleged that the Fishers were officers, directors, and sole shareholders active in the management of Quality Fresh, a closely-held corporation engaged in handling produce and vegetables in interstate commerce, and thus subject to PACA. [ER tab 1 p. 2] The complaint alleged that Sunkist had preserved its trust benefits by correspondence with the Secretary, and set out the elements of the PACA trust. Quality Fresh, under the Fishers' direction, failed to maintain the trust assets to satisfy the debt to Sunkist, instead diverting the assets to third parties. The Fishers therefore breached their fiduciary duties to maintain trust assets, and were personally liable for the amount still due and owing. [*Id.* pp. 4–5] The complaint also alleged that the Fishers breached the PACA duty to pay promptly for the produce. [*Id.* at 6]

The federal court action alleges new and different evidentiary facts, including the nature of the corporation and its governance by PACA, the identity of the Fishers, their relationship to and control of Quality Fresh, and their status as fiduciaries under a PACA trust theory. Under Arizona law, the state court action does not preclude the PACA claim. *See Piatt,* 773 F.2d at 1035 (Arizona judgment denying prisoner wages for work as teacher's aide and porter did not bar federal litigation claiming wages for work in prison workshop); *Wilson v. Bramblett,* 91 Ariz. 284, 371 P.2d 1014, 1017 (1962) (contract action on note in California not res judicata to Arizona action on account stated and open account; joinder of different causes of action not compulsory), *cert. denied,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).

"[T]he determination of what comprises a single cause of action is not a precise or mechanical process.... Arizona courts and this court have held that res judicata should

not be applied so rigidly as to defeat the ends of justice." *Ross,* 634 F.2d at 458–59 (quotations omitted). As the district court noted, the dismissal of Sunkist's action may produce an inequitable result. In this case, the application of the Arizona law of res judicata avoids injustice by allowing Sunkist to proceed.

## III. *Collateral estoppel*

Whether collateral estoppel is available is a mixed question of law and fact which this court reviews de novo. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir. 1985). Although the district court based its decision on res judicata, we address collateral estoppel, or issue preclusion, because the parties raised it below and on appeal.

■ In Arizona, collateral estoppel precludes the litigation of issues previously litigated if

(1) the issue was actually litigated in a previous proceeding; (2) there was a valid and final decision on the merits; (3) resolution of the issue was essential to the decision; (4) there is common identity of the parties; and (5) there was a full and fair opportunity to litigate the issue.

*Manzanita Park, Inc., v. Insurance Co. of N. Am.,* 857 F.2d 549, 552 (9th Cir.1988); *In re Lockard,* 884 F.2d 1171, 1175 (9th Cir.1989). Only one of the above requirements is met in this case. "Arizona applies the rule that collateral estoppel may be used defensively by a nonparty against a party to a prior proceeding." *Manzanita Park,* 857 F.2d at 552; *see Gilbert,* 900 F.2d at 1410. The Fishers could thus use estoppel defensively against Sunkist, even though they as individuals were not parties to the state suit. None of the other requirements, however, is even arguably met. It is obvious that the PACA issue was not litigated in the state action; there was no decision on the merits of the trust cause of action; the PACA claim was not essential to the determination of the contract claim; and there was no full and fair opportunity to litigate the PACA claim. We therefore hold that the state action does not collaterally estop Sunkist from alleging that the Fishers are liable under a PACA trust theory.

## IV. *Administrative dismissal*

The Fishers claim that the Secretary of Agriculture's dismissal of Sunkist's administrative action collaterally estopped Sunkist's PACA action. That is not correct. The Secretary dismissed Sunkist's action against Quality Fresh after Sunkist notified the Secretary that Sunkist had received a judgment by stipulation in the state court. [ER tab 14] The Secretary applied the doctrine of election of remedies, citing 7 U.S.C. § 499e(b), which provides that "liability shall be enforced *either* (1) by complaint to the Secretary as herein provided, *or* (2) by suit in any court of competent jurisdiction" (emphasis added). In holding that Sunkist could not simultaneously sue for reparation from Quality Fresh both in state court and in an administrative complaint, the Secretary did not address whether Sunkist could maintain an action against the Fishers under the trust provisions of PACA. The Secretary's dismissal, at Sunkist's request, did not constitute preclusion of the PACA suit against the Fishers.

## CONCLUSION

Res judicata and collateral estoppel "limit to one the number of times a defendant can be vexed by the same claim or issue and they promote efficiency in the judicial system by putting an end to litigation." *Gilbert*, 900 F.2d at 1410. In this case, however, the application of either doctrine would not promote judicial efficiency. If a state contract action prevented a federal action to enforce a PACA trust, a plaintiff would have two choices if it wanted to preserve its PACA remedies. A plaintiff would have to allege a federal PACA trust claim in every state contract action involving a dispute over payment with a dealer, whether or not such a claim would eventually prove necessary. Alternatively, a plaintiff might choose to file any suit involving a contract dispute in federal court under PACA, with the contract claim as a pendent state claim. This course would prevent the resolution of payment disputes in state court on a simple contract theory without resort to PACA, and would bring into federal court many cases not requiring the application of PACA. Such a result is ineffi-

cient and inconsistent with a statute that expressly provides that its remedies are in addition to the remedies already provided by the common law.

We reverse the district court's grant of summary judgment.