BOULDER FRUIT EXPRESS & HE-
GER ORGANIC FARM SALES; Con-
tinental Sales Co.; Health & Lejeune;
Gold Inc.; Natural Selection Foods,
L.L.C.; New Harvest Organics; Pacif-
ic Organic Production, Pacific Organ-
ic Produce S.A.; American 4–Star
Marketing Inc., dba Rainbow Valley
Orchards; Sundance Natural Foods,
Plaintiffs–Appellants,

v.

TRANSPORTATION FACTORING,
INC., a Utah Corporation, dba Trans-
fac; Capitol Resource Funding, Inc.,
Defendants–Appellees.

No. 99–56770.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 2001

Filed June 4, 2001

Michael J. Keaton, Glen Ellyn, Illinois, for the plaintiffs-appellants.

Douglas L. Thorpe, Santa Monica, California and Neil M. Sunkin, Los Angeles, California, for the defendants-appellees.

Before: ARCHER,[1] TROTT and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

## I. Background

This case concerns the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a–499t (2000). Appellants[2] are growers of fresh fruits and vegetables. From April 1996 to April 1997, appellant growers sold perishable goods to Certified Organics[3] on credit. Certified was in the business of purchasing fresh agricultural produce from growers for resale. Certified resold the produce and invoiced its customers, creating accounts receivable. Certified then sold its accounts receivable to Transportation Factoring, Inc. (Transfac) pursuant to a factoring agreement. Under that agreement, Transfac purchased the accounts from Certified for 80% of their face value.

When Certified defaulted in its payments to the growers, the growers sued not only Certified but also Transfac. Why Transfac? The growers allege that Certified's factoring of its accounts to Transfac breached a statutory trust created by PACA for the benefit of the growers. They allege that Certified was to have held the accounts receivable in trust for the growers until the growers were paid for

---

1. The Honorable Glenn L. Archer, Jr., Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

2. Appellants include Boulder Fruit Express, Continental Sales Company, Health & Lejeune, Heger Organic Farm Sales, Gold, Inc., Natural Selection Foods, LLC., New Harvest Organics, Pacific Organic Produce, S.A., American 4–Star Marketing, Inc., d/b/a Rainbow Valley Orchards, and Sundance Natural Foods.

3. Certified is not a party to this appeal and this case was proceeding in district court against Certified and Messing when the notice of appeal was filed.

their produce. They allege that in factoring Certified's accounts receivable, Transfac acquired "trust assets"—the receivables—in breach of the trust and must disgorge them to the growers, unless Transfac can prove that it was a bona fide purchaser for value without notice of the breach. The growers also sued Capital Resource Funding, Inc., another factoring company that referred Certified's business to Transfac.

On motion for summary judgment, the district court granted summary judgment for Transfac and Capital Funding. The court ruled that because Transfac had paid Certified more for the accounts ($3.297 million) than Transfac collected on them ($3.278 million), albeit less than the face value of the accounts ($4.7 million), Certified's factoring of its accounts did not breach the trust. In other words, because Transfac bought the accounts for at least what they were worth, maybe more, the factoring arrangement did not dissipate trust assets, and therefore, Transfac cannot be found to have acquired the accounts in breach of the trust.

The district court entered judgment in favor of Transfac and Capital Resource Funding pursuant to Fed.R.Civ.P. 54(b). Other claims against Certified and John Messing, Certified's principal, were not resolved by the summary judgment motion.

We have jurisdiction under 28 U.S.C. § 1291, and review the district court's grant of summary judgment de novo. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). We affirm.

## II. Discussion

### A. PACA.

Congress enacted PACA in 1930 to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir.1997) (citing *Farley & Calfee, Inc. v.*

*USDA*, 941 F.2d 964, 966 (9th Cir.1991)). In 1984, Congress amended PACA "to remedy [the] burden on commerce in perishable agricultural commodities and to protect the public interest" caused by accounts receivable financing arrangements that "encumber or give lenders a security interest" in the perishable agricultural commodities superior to the growers. 7 U.S.C. § 499e(c)(1). Section 499e(c) created the PACA trust:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id.* at § 499e(c)(2); *see also* 7 C.F.R. § 46.46 (2000). As explained by the Second Circuit:

> This provision imposes a "non-segregated floating trust" on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust. Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors.

*Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995) (citations omitted).

By the express language of PACA, the trust applies to receivables generated by the sale of commodities, just as it does to the commodities themselves. 7 U.S.C.

§ 499e(c)(2); 7 C.F.R. § 46.46. It is designed to protect commodity producers against secured lenders. In the ordinary case, here is how it works: Farmer sells oranges on credit to Broker. Broker turns around and sells the oranges on credit to Supermarket, generating an account receivable from Supermarket. Broker then obtains a loan from Bank and grants Bank a security interest in the account receivable to secure the loan. Broker goes bankrupt. Under PACA, Broker is required to hold the receivable in trust for Farmer until Farmer was paid in full; use of the receivable as collateral was a breach of the trust. Therefore, Farmer's rights in the Supermarket receivable are superior to Bank's. In fact, as a trust asset, the Supermarket receivable is not even part of the bankruptcy estate.

That's the easy case. The issue today concerns factoring, the commercial practice of converting receivables into cash by selling them at a discount. BLACK'S LAW DICTIONARY (7th ed.1999). The question before us is whether Certified breached the PACA trust by selling its accounts to Transfac pursuant to the factoring agreement.

 We apply general trust principles to questions involving the PACA trust, unless those principles directly conflict with PACA. *Sunkist,* 104 F.3d at 282. The Restatement of Trusts defines a breach of trust as "a violation by the trustee of any duty which as trustee he owes to the beneficiary." RESTATEMENT (SECOND) OF TRUSTS § 201 (1959). Federal regulations set forth a PACA trustee's primary duty:

> Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA].

7 C.F.R. § 46.46(d)(1). The regulations further define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *Id.* § 46.46(a)(2).

## B. Factoring agreements do not per se breach the PACA trust.

 In this case, the growers argue that factoring agreements per se breach the PACA trust because, by definition, they contemplate the sale of trust receivables at less than their face value. However, nothing in PACA or the regulations prohibits PACA trustees from attempting to turn receivables into cash by factoring. To the contrary, a commercially reasonable sale of accounts for fair value is entirely consistent with the trustee's primary duty under PACA and 7 C.F.R. § 46.46(d)(1)—to maintain trust assets so that they are "freely available to satisfy outstanding obligations to sellers of perishable commodities." The goal of PACA, after all, is not the perpetuation of unliquidated commercial paper, but to assure that growers are paid for their commodities. H.R.Rep. No. 98–543, at 3 (1983), *reprinted in* 1983 U.S.C.C.A.N. 405, 406; *Sunkist,* 104 F.3d at 282. Of course, whether a particular factoring arrangement is commercially reasonable will depend upon its terms. A PACA trustee who sells accounts for pennies on the dollar, just to turn a quick buck, might well have breached the PACA trust, while a trustee who factors accounts at a commercially reasonable rate would not. *Cf. E. Armata, Inc. v. Platinum Funding Corp.,* 887 F.Supp. 590, 593 (S.D.N.Y.1995) (accounts receivable factored at 60 to 65% of face value

were not factored for value). We hold that factoring agreements do not, per se, violate PACA.

■■■ Our view that factoring agreements do not per se violate the PACA trust is consistent with general trust principles. Generally, a trustee can sell trust assets *unless* the sale breaches the trust. RESTATEMENT (SECOND) OF TRUSTS § 190. Whether a transferee of trust assets is a bona fide purchaser becomes relevant only as a defense after it has been determined that a breach of trust has occurred. *See id.* at § 284(1); *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir.1998); *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir.1997); *Endico Potatoes*, 67 F.3d at 1067; *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1380 (3d Cir.1994); *C.H. Robinson Co. v. Trust Co. Bank*, 952 F.2d 1311, 1313 (11th Cir.1992).

### C. This particular factoring arrangement did not breach the PACA trust.

■■■ Appellant growers argue in the alternative that, even if factoring agreements do not per se violate PACA, the factoring agreement in this case breached the trust by dissipating the trust assets because Transfac did not pay face value for the receivables. Transfac responds that the factoring arrangement here actually enhanced the trust because it was commercially reasonable. We agree with Transfac.

The factoring agreement allowed Certified to convert invoices that were not payable for 30 days (including uncollectible and invalid invoices) into cash that Certified could have used to immediately pay growers. Far from dissipating assets, Certified actually received from Transfac $18,482 more for the accounts than the accounts would prove to be worth. In any case, a factoring discount of 20% was never shown to be commercially unreasonable.

■■■ The growers argue that Certified necessarily admitted a breach of the trust when it admitted that it was unable to pay its growers and suppliers of produce. The growers confuse breach of contract with breach of trust. The only question in this case is whether Certified breached its duty as a trustee when it sold the accounts receivable to Transfac. Certified's *contractual* obligation to pay is not in issue. To the extent that the growers argue that Transfac, as a transferee of trust assets, is strictly liable to the growers because Certified, the transferor, has failed to pay, we already have held that third parties are not guarantors of the PACA trust. They are liable only if they had some role in causing the breach or dissipation of the trust. *Sunkist*, 104 F.3d at 283; *see also Consumers Produce*, 16 F.3d at 1381–82. To reiterate, in this case, Transfac paid Certified more for trust assets than those assets were worth.

■■■ Finally, we agree with the district court that the growers never proved that the trust funds were misapplied in the first place. The growers conceded that they did not know how Certified spent the funds it received from Transfac. If, for example, the funds were used to pay off *other* perishable commodities producers, no breach of the trust would have occurred. This is because the PACA trust, by definition, is a non-segregated floating trust in which assets of other growers can be commingled. 7 U.S.C. § 499e(c).

### III. Conclusion

In summary, we hold that factoring does not, per se, breach a PACA trust. We also hold that the particular factoring arrangement in this case was commercially reasonable and did not breach or otherwise dissipate the trust. The judgment of

the district court in favor of Transfac and Capital Resource Funding[4] is AF-FIRMED.

4. Capital Resource Funding's liability, if any, was predicated upon and solely derivative of Transfac's.