Larry SHEPARD d/b/a
P.D.Q. Sales, et al.

v.

K.B. FRUIT & VEGETABLE, INC.

Civ. A. No. 91–6624.

United States District Court,
E.D. Pennsylvania.

June 27, 1994.

Stephen P. McCarron, Allan R. Kahan, Silver Spring, MD, Joseph F. O'Dea, Jr., Saul Ewing Remick & Saul, Philadelphia, PA, for plaintiffs.

Jeffrey M. Chebot, Whiteman, Bankes and Chebot, Philadelphia, PA, for plaintiff Bushmans', Inc.

Michael J. Stack, Jr., Stack & Gallagher, Philadelphia, PA, Kenneth D. Federman, Groen, Laveson, Goldberg and Rubenstone, Bensalem, PA, for defendants.

Jon C. Sirlin, Jon C. Sirlin & Associates, Philadelphia, PA, for Garnishee PNC Bank, Nat. Ass'n.

Leonard Sarner, Sarner & Associates, Philadelphia, PA, for defendant Ilene Blumberg.

Ira L. Mazer, Philadelphia, PA, for defendant William Liczbinski.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Larry Shepard d/b/a P.D.Q. Sales brought this action against K.B. Fruit and Vegetable, Inc. to recover statutory trust assets pursuant to Section 5(c) of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499(e)(c). Presently before the court is a motion by the plaintiffs for summary judgment against defendants Joseph Kaleck, Brian Kaleck and Alan Kaleck (collectively "the Kalecks"). Also before the court is the Kaleck's cross motion. For the reasons which follow, the motion of the plaintiffs is granted and the motion of the Kalecks is denied.

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340–41 (3d Cir. 1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Borough of Chester*, 891 F.2d 458, 460 (3d Cir.1989). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. *First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins.*, 824 F.2d 277, 280 (3d Cir.1987). Following such a showing, the non-moving party must present evidence through affidavits or depositions and admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. If that evidence is, however, " 'merely colorable' or is 'not significantly probative,' summary judgment may be granted." *Equimark Commercial Finance Co. v. C.I.T. Financial Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting, in part, *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

The Kalecks do not dispute that KB leased two units from the Philadelphia Fresh Food Terminal Corporation to operate a wholesale produce company. The officers, directors and shareholders of KB were Joseph Kaleck, President Director and 52% shareholder, Brian Kaleck, Vice–President, Director and 24% shareholder and Alan Kaleck, Secretary, Treasurer, Director and 24% shareholder.

The Kalecks also do not dispute that plaintiffs delivered produce to the KB location and that KB has not paid all outstanding invoices. The Kalecks aver, however, that they were not actively involved in the operation of KB; that Joseph Kaleck's nephew, Stanley Blumberg, was the true operator of KB during the period in question.

Appended to the Kaleck's moving papers are excerpts of Blumberg's deposition. He testified that he was the actual owner of the business, even though the stock of KB was in the name of the Kalecks. The stock and lease are in the Kaleck's name because of the rules of the Philadelphia Fresh Food Terminal Corporation. The Terminal Corporation only permits current occupants to bid on available units. Because of this rule, Blumberg asked his uncle, Joseph Kaleck to submit the bid under the name of Kaleck Brothers. The naming of the Kalecks as directors and the distribution of stock was Blumberg's idea. His attorney incorporated the business. Blumberg testified that Joseph Kaleck's only involvement was to procure the lease.

Appended to the papers of the plaintiffs are the decisions rendered by the United States Department of Agriculture in this matter on the issue of the Kalecks' licenses to conduct business under PACA. In three separate decisions, the Department concluded under PACA that each of the Kalecks was "responsibly connected" to KB. The Department found, *inter alia*, that the Kalecks entered into the agreements with the Terminal Corporation, were signatories of KB's commercial banking agreement with Mellon Bank, applied for KB's business tax identification number, paid rent to the Terminal Corporation after Blumberg's operation ceased, and stored some of their produce in KB's stalls. The Kalecks aver that these decisions have been appealed and are currently still pending.[1]

PACA regulates trading in perishable agricultural commodities. The Act was amended in 1984 upon a finding by Congress that a burden on commerce in perishable agricultural commodities was caused by certain financial arrangements, whereby dealers would receive goods without having made payment for them. To remedy this burden, Congress provided a statutory trust on behalf of unpaid suppliers or sellers. The relevant portion of the statute reads as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

7 U.S.C. § 499e(c)(2).

The question of who may be liable under the statute has been the subject of several decisions. In *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346 (S.D.N.Y. 1993), the court determined that the sole shareholder of the corporation licensed to sell produce under PACA was secondarily liable to PACA trust creditors as a corporate fiduciary, because "[a]n individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act". *Id.* at 348. The court based its decision upon two earlier unpublished cases, *In re Paul Shipton*, 9th Cir. BAP No. CC–90–1366–OVP and *In re Nix*, 1992 WL 119143 (M.D.Ga. April 10, 1992), in which individual, sole shareholders, were found personally liable for their corporation's PACA liability. In *Nix*, the court based its finding of liability on the two complementary corporate law principles that

---

1. In the proceedings before the Department, the Kalecks argued unsuccessfully that they were never officers, directors or stockholders of the firm that violated PACA. The claim was premised on the thought that KB was formed solely for the purpose of allowing the corporation to secure and hold the lease from the Terminal Corporation, so that Blumberg could operate an independent business. They claimed that Blumberg's use of the name KB was unauthorized. The Department found this argument to be facile. It has not been raised herein.

individuals are generally not held responsible for the liabilities of a corporation, and that a corporation can act only through its agents and can thus fulfill fiduciary obligations only through its agents. The court therein found that the individual was the person who controlled all the significant business of the PACA licensee.

Also on this issue is the decision in *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F.Supp. 209 (E.D.N.Y.1993). The court held the president of 4-XXX was personally liable to PACA creditors based on its finding that he knowingly caused the corporation to breach its duty as a trustee. *Id., citing West Indian Sea Island Cotton Ass'n v. Threadtex, Inc.,* 761 F.Supp. 1041, 1054 (S.D.N.Y.1991) (an·officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to the beneficiaries for that loss). However, the court ·found insufficient evidence of record to hold the president's wife liable. Although the owner of 100% of the stock of 4-XXX, the court found the wife could not be presumed to have exercised control over the. company's affairs.

 The Kalecks would have us read these decisions, especially the dichotomy created by the court in· *4-XXX,* as requiring active involvement on the part of each individual defendant for PACA liability to attach. The PACA creditors argue, based on *Morris Okun* that the phrase "a person who is in a position to control trust assets" means one who is "legally responsible" for trust assets. These cases, we find, read as a whole establish the proposition that PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust. Accordingly, the Kalecks are not secondarily liable merely because they served as corporate officers or shareholders. As stated in *4-XXX,* there may be many small corporations in which an individual may hold corporate office or shares, for entirely legitimate purposes, and not exercise any day-to-day control over the company's affairs. *Id.* at 213. This, however, is not the end of the inquiry. First,

we must consider whether the Kalecks' involvement with KB was sufficient to establish legal responsibility. Second, we must determine whether the Kalecks, in allowing Blumberg to use their corporation without any appreciable oversight, breached a fiduciary duty owed to the PACA creditors.

· We find the Kalecks' involvement with KB was sufficient to demonstrate "active involvement" in the operation of the business. Viewing the evidence in the light most favorable to the Kalecks, the documentary evidence shows the Kalecks set up the corporation, owned the stock of the corporation and exercised legal control as officers and directors. The Kalecks were also signatories of KB's commercial banking agreement with Mellon Bank, applied for KB's business tax identification number, paid rent to the Terminal Corporation after Blumberg's operation ceased, and stored some of its produce in KB's stalls. The record demonstrates that the Kalecks were not merely uninvolved "silent" corporate officers or shareholders, but rather established the business, albeit for Blumberg's sake, used the premises and took action to continue the business after Blumberg abandoned it.

 We also find the Kalecks breached a fiduciary duty owed to the PACA creditors. Being a statutory trust, PACA incorporates common law breach of trust principles. *See generally, C.H. Robinson Co. v. B.H. Produce Co., Inc.,* 723 F.Supp. 785, 792 (N.D.Ga. 1989) (applying general principles of the law of trusts to PACA breach of trust claim). Under the common law, the trustee of a trust is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of. ordinary prudence would exercise in dealing with his own property. Restatement (Second) of Trusts, § 174. Whether the trustee is prudent in the doing of. an act depends upon the circumstances as they reasonably appear to him at the time when he does the act. · *Id.,* Comment b. Further, the trustee is under a duty to the beneficiary to take reasonable steps to take and keep control of the trust property. Restatement (Second) of Trusts, § 175. A trustee may entrust the control of trust property to an agent but only when doing so is reasonable. *Id.,* Comment e: Permitting

Blumberg to operate the PACA regulated business, which the Kalecks established and for which they were legally responsible, apparently without oversight to ensure that PACA creditors were paid, was not reasonable.

In conclusion, while we are sympathetic to the Kaleck's situation, having to shoulder responsibility for Blumberg's failures to pay trust creditors, we must keep in mind the intent of Congress in establishing PACA: that a burden on commerce in perishable agricultural commodities was caused by dealers receiving goods without having made payment for them. The statutory trust remedy was created to ensure that farmers do not suffer when the agricultural produce dealers abandon their businesses without paying their debts. While the Kalecks have been rewarded for their familial loyalty with the threat of loss of their own business, had they exercised reasonable care to see that KB was properly managed, this lawsuit may well have been avoided. For the reasons stated, the motion of the plaintiffs for summary judgment will be granted.