**GOLMAN–HAYDEN CO., INC., and Ideal Sales, Inc., Plaintiffs,**

v.

**FRESH SOURCE PRODUCE, INC. and Edward Tomaneng, Defendants.**

No. 3:97–CV–2930–X.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 23, 1998.

Louis W. Diess, III, Stephen P. McCarron, McCarron & Associates, Washington, DC, Quinn Clinton Chandler, Chandler & Chandler, Dallas, TX, for Goldman–Hayden Company Inc, Ideal Sales, Inc., plaintiffs.

Sheila I. Jalufka, Law Office of Sheila I. Jalufka, San Marcos, TX, for Fresh Source Produce Inc, defendant.

Anthony Alan Petrocchi, Christopher M Weil, Jeffrey Wallace Hellberg, Jr, Weil & Petrocchi, Dallas, TX, Sheila I. Jalufka, Law Office of Sheila I. Jalufka, San Marcos, TX, for Edward Tomaneng, defendant.

Richard nmi Mays, Law Office of Richard Mays, Anna, TX, provider pro se.

Michael Geoffrey Wimer, Wimer & Jobe, Dallas, TX, for Martin Brothers Produce, Roger's Produce, Inc., intervenor-plaintiff.

Robert Yaquinto, Jr, Sherman & Yaquinto, Dallas, TX, for Bear Produce Company Inc., intervenor-plaintiff.

Stephen P. McCarron, McCarron & Associates, Washington, DC, for Southmill Distribution Inc., intervenor-plaintiff.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court is Plaintiffs'/Intervenors' Motion for Summary Judgment, filed September 23, 1998; Defendant Tomaneng's Response, filed October 19, 1998; and Plaintiffs'/Intervenors' Reply, filed November 3, 1998. After carefully considering the motion, briefs, supporting evidentiary submissions, and applicable law, the Court determines that no issues of material fact exist with respect to the issues raised in the motion for summary judgment. Therefore, Plaintiffs'/Intervenors' Motion for Summary Judgment is GRANTED.

## BACKGROUND

This case was filed under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a *et seq.* Plaintiffs Golman–Hayden Company, Inc. ("Golman–Hayden") and Ideal Sales, Inc. ("Ideal") and Intervenors Martin Brothers Produce ("Martin"), Roger's Produce, Inc. ("Roger's"), Bear Produce Company, Inc. ("Bear") and Southmill Distribution, Inc. d/b/a Southmill Dallas ("Southmill") are engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities (hereinafter "produce") in interstate commerce.

Defendant Fresh Source Produce, Inc. ("Fresh Source") was a dealer and commission merchant as defined in PACA, with its principal place of business in Dallas. Defendant Edward Tomaneng ("Tomaneng") owns 100% of the shares of Fresh Source. The most recent PACA license issued to Fresh Source by the U.S. Department of Agriculture indicates that Tomaneng is the sole owner and principal in Fresh Source. Tomaneng is a doctor who practices medicine in San Marcos. Fresh Source ceased doing business on November 21, 1997 and filed for protection under Chapter 7 of the Bankruptcy Code on April 3, 1998.

Plaintiffs filed this suit on December 3, 1997 to enforce the trust provisions of PACA, 7 U.S.C. § 499e(c). Plaintiffs/Intervenors allege that they sold and delivered to Fresh Source wholesale lots of produce collectively worth $271,527.70. If the funds from Fresh Source's remaining accounts receivable were disbursed on a pro-rata basis to Plaintiffs/Intervenors, a shortfall of $134,582.60 remains due and owing. Plaintiffs/Intervenors have

moved for summary judgment, asserting that Tomaneng was the sole principal, owner, officer and director of Fresh Source, in a position of total control over the dissipated trust assets, so that his failure to exercise control to preserve the trust assets is a breach of his fiduciary duty for which he is individually liable.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment or partial judgment as a matter of law. Fed. R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir.1994); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548. Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-

movant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994); *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir.1993); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R.Civ.P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir.1988). However, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

Originally enacted in 1930, PACA regulates the produce industry and promotes fair dealings in transactions with regard to fresh fruits and vegetables. *Wayne Cusimano,*

*Inc. v. Block,* 692 F.2d 1025, 1026 (5th Cir. 1982).

> [PACA] provides that when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created on acceptance of the commodities. The statutory trust is impressed on all inventory of food or other products derived from perishable agricultural commodities, as well as any receivables or proceeds from the sale of such commodities or products, until the seller is fully paid.
>
> Once the trust is created and the supplier's trust rights are properly preserved, the supplier obtains a priority interest in the trust assets held by the debtor. [PACA] evidences the intent to give an unpaid produce supplier's claim priority over the claim of a creditor with a security interest in the buyer's inventory and the proceeds thereof. This priority status is superior to almost any other creditor, even if the debtor seeks protection under the bankruptcy laws.

Bartholomew M. Botta, *Personal Liability for Corporate Debts: The Reach of the Perishable Agricultural Commodities Act Continues to Expand,* 2 Drake J.Agric.L. 339, 340–41 (1997).

*Tomaneng's Individual Liability*

▮ Plaintiffs/Intervenors assert that they sold and delivered to Fresh Source $134,-582.60 worth of produce for which they have not been paid, and that Fresh Source has no assets remaining to satisfy their PACA trust claims. Plaintiffs/Intervenors seek to hold Tomaneng individually liable for the funds they are owed by Fresh Source, relying on *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346 (S.D.N.Y.1993), and subsequent cases. In *Morris Okun,* the district court held the sole shareholder of the corporation secondarily liable for unpaid produce:

> PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary

duty, and is personally liable for that tortious act.

*Morris Okun* at 348. The court distinguished its decision holding a fiduciary liable for breach of trust under PACA from the piercing of the corporate veil doctrine, which disregards the corporate form because the individual has committed a fraud or the corporation is merely a shell used by individual shareholders to advance personal, rather than corporate, interests. *Id. See also Bronia, Inc. v. Ho,* 873 F.Supp. 854 (S.D.N.Y. 1995) (sole shareholder, director and president of corporation held personally liable for corporation's breach of the PACA trust).

In *Shepard v. K.B. Fruit & Vegetable, Inc.,* 868 F.Supp. 703 (E.D.Pa.1994), the district court held the debtor corporation's three individual shareholders secondarily liable to the PACA trust creditors. The court determined that prior case law had established that "PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id.* 868 F.Supp. at 706.

The *Shepard* court concluded that the liability determination of individual shareholders should be based on two factors: 1) whether the individuals' involvement with the corporation was sufficient to establish legal responsibility, and 2) whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors. *Id.* In its discussion of the second factor, the court noted that permitting the corporation's manager to operate the PACA regulated business, which the individual shareholders established and for which they were legally responsible, apparently without oversight to ensure that PACA creditors were paid, was not reasonable under common law of breach of trust principles. *Id.* 868 F.Supp. at 707.

The only appellate court thus far to decide the issue of the individual's liability for corporate PACA trust assets is the Ninth Circuit in *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280 (9th Cir.1997). The Ninth Circuit

agreed with prior district court decisions that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Id.* 104 F.3d at 283.

In his affidavit, Tomaneng acknowledges that he is the sole shareholder of Fresh Source, but denies that he is a person with the degree of control required to establish his individual liability to Plaintiffs/Intervenors under PACA. Tomaneng asserts that he was never active in the operations of Fresh Source's business, and has never acted as a broker, dealer, or commission merchant of produce subject to PACA. Tomaneng also states that he never personally received any produce purchased by and delivered to Fresh Source, and that he never commingled funds of Fresh Source, as those funds were not in his possession or control.

Recognizing the lack of controlling Fifth Circuit precedent on the issue, this Court agrees with the Ninth Circuit and the prior district court cases cited above and concludes that Tomaneng, as the sole shareholder of Fresh Source, in a position to control PACA trust assets, shall be held secondarily liable for breaching his fiduciary duty to preserve those assets. The Court finds persuasive the reasoning of the *Shepard* court that an individual shareholder, by failing to exercise any appreciable oversight of the corporation's management, breaches a fiduciary duty owed to the PACA creditors. Sole shareholder Tomaneng's decision to be merely a passive investor in Fresh Source does not allow him to escape liability for its PACA violations.

The Fifth Circuit has characterized PACA as a "tough law," *Hawkins v. Agricultural Marketing Serv.*, 10 F.3d 1125, 1130 (5th Cir.1993), remarking that "any investor in a perishable commodities corporation should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through the PACA." *Id* 10 F.3d at 1131. Had Tomaneng exercised reasonable care to ensure proper management of Fresh Source, then the breach of fiduciary duty to the PACA creditors might have been avoided.

*Plaintiffs'/Intervenors' Claims*

PACA provides for the establishment of a nonsegregated, floating trust which consists of the produce delivered to the buyer, the accounts receivable from the produce sold, and the proceeds generated from the produce. 7 U.S.C. 499e(c)(2); *Matter of Snyder,* 184 B.R. 473, 475 (D.Md.1995). Fresh Source's failure to turn over the trust assets when payment was due to Plaintiffs/Intervenors, the produce sellers, breached its fiduciary duty to make the trust assets freely available to them. *Bronia* at 861.

When this lawsuit was filed, Plaintiffs and Defendants entered into a Stipulation and Order signed by the Court on December 11, 1997. Defendants stipulated that between September 30, 1997 and November 3, 1997, just before Fresh Source ceased doing business, Golman–Hayden sold and delivered to Fresh Source at least $58,000 worth of produce for which it had not been paid. Defendants also stipulated that between October 13, 1997 and November 3, 1997 Ideal sold and delivered to Fresh Source $27,501.30 worth of produce for which it had not been paid. Defendants also stipulated that Golman–Hayden and Ideal are beneficiaries of the PACA trust required to be maintained by Fresh Source, and they have properly preserved their interests in the PACA trust in the collective amount of at least $85,501.30.

As part of the Stipulation, Defendants agreed to continue to identify and collect proceeds from Fresh Source's accounts receivable and the sale of PACA inventory assets, and to preserve these proceeds by depositing them in an interest-bearing account at NationsBank. Defendants agreed not to dissipate or assign any assets of Fresh Source, and agreed to supply the Plaintiffs with a weekly accounting of all deposits into the trust account.

Summary judgment evidence presented subsequent to the Stipulation demonstrates that between September 30, 1997 and November 12, 1997, Golman–Hayden in fact sold to Fresh Source $66,042.75 worth of produce for which it has not been paid. The invoices provide the statutory notice of Golman–Hay-

den's intention to preserve the PACA trust. 7 U.S.C. § 499e(c)(4); *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 206 (3d Cir.1998).

Southmill's summary judgment evidence demonstrates that between October 2, 1997 and November 19, 1997 Southmill sold to Fresh Source $21,825.00 worth of produce for which it has not been paid. The invoices provide the statutory notice of Southmill's intention to preserve the PACA trust. Roger's summary judgment evidence demonstrates that between September 16, 1997 and November 17, 1997 Roger's sold to Fresh Source $16,847.25 worth of produce for which it has not been paid. Roger's owner testified by affidavit (unrefuted by testimony from Fresh Source or Tomaneng) that it has properly and completely perfected its PACA trust in the amount of $16,847.25.

Martin's summary judgment evidence demonstrates that between January 11, 1996 and November 17, 1997 Martin sold to Fresh Source more than $415,000 worth of produce and of that, it has not been paid for $22,999.75 worth of produce. The invoices provide the statutory notice of Martin's intention to preserve the PACA trust. Bear's summary judgment evidence demonstrates that between September 8, 1997 and November 20, 1997 Bear sold to Fresh Source $116,311.65 worth of produce for which it has not been paid. The invoices provide the statutory notice of Bear's intention to preserve the PACA trust. Bear has also submitted a copy of its letter to the U.S. Department of Agriculture, PACA Branch, notifying it of Bear's intention to preserve the PACA trust benefits in $116,311.65 of unpaid produce sales to Fresh Source.

The Court concludes that Plaintiffs and Intervenors collectively sold to Fresh Source $271,527.70 worth of produce for which it has not been paid. If the money in the PACA trust account at NationsBank created as part of the Stipulation from the accounts receivable of Fresh Source were distributed prorata to the Pl aintiffs/Intervenors, a shortfall of $134,582.60 would remain due and owing to Plaintiffs/Intervenors. The motion for summary judgment is GRANTED, and the Court will enter judgment in the amount of $134,582.60 in favor of the Plaintiffs/Intervenors.

*Attorney's Fees*

■ Although PACA does not explicitly provide for attorney's fees in an action by produce sellers to enforce PACA trust rights, courts in previous cases have permitted plaintiffs to recover their attorney's fees. *See In re Milton Poulos, Inc.,* 947 F.2d 1351, 1353 (9th Cir.1991); *In re Monterey House, Inc.,* 71 B.R. 244, 248 (Bankr.S.D.Tex.1986); *Continental Sales Co. v. Billings,* No. H–93–2763 (S.D.Tex. Mar. 6, 1996). The Court agrees with Plaintiffs/Intervenors that the refusal to award attorney's fees in a case such as this to enforce PACA trust benefits would effectively thwart the purpose of PACA by making it impractical for a seller of produce to bring the necessary action to enforce its rights. Within 21 days of the date of this Order, counsel are directed to submit by affidavit evidence of a reasonable and necessary attorney's fee for counsel for each of the Plaintiffs/Intervenors through this date.

### CONCLUSION

For the reasons discussed above, Plaintiffs'/Intervenors' Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**