**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 12, 2011

No. 10-20788

Lyle W. Cayce
Clerk

RUBY ROBINSON CO., INC.,

Plaintiff

v.

BRYAN HERR; SAMUEL PETRO, JR.,

Defendants - Appellants

v.

NATUREBEST PRE-CUT & PRODUCE LLC,

Intervenor Plaintiff- Appellee

Appeal from the United States District Court
of the Southern District of Texas
USDC No. 4:08-CV-00199

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Bryan Herr and Samuel Petro, Jr. appeal the district court's summary judgment, holding them liable to Intervenor Plaintiff-Appellee NatureBest Pre-Cut & Produce LLC ("NatureBest") under the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20788

Perishable Agricultural Commodities Act ("PACA").  We AFFIRM.

## I.

Herr and Petro each owned 25% of the stock of Kalil Fresh Marketing Inc., d/b/a Houston's Finest Produce ("Houston's Finest"), a wholesale produce business established in 2000 by John Kalil, Petro's cousin.  In 2002, Kalil informed Petro that he needed a capital infusion to turn his business around.  Petro and Herr decided to invest, and executed a joint stock purchase agreement in July 2002, together assuming ownership of half the company.  The stock purchase agreement entitled Herr and Petro to input and authority regarding which accounts to sell to and on what terms, equipment purchases, major personnel changes, and sales and business strategies.  The agreement further stated that a company board of directors would be established, with Petro, Herr, and Kalil as its members.  Kalil was appointed chief executive officer, with day-to-day operating authority.  The stock purchase agreement afforded each owner a right to audit the company's books.

NatureBest sold produce to Houston's Finest during the period of November 15, 2007, to January 23, 2008.  Houston's Finest filed a voluntary Chapter 7 bankruptcy petition on January 29, 2008, with an outstanding balance due to NatureBest of $41,201.85.

On July 17, 2008, NatureBest was permitted to intervene in this action, in which several PACA creditors sued Herr, Petro, and Kalil for the debts of Houston's Finest.  All claims were resolved, with the exception of NatureBest's claims against Herr and Petro, from whom NatureBest sought the remaining balance of $8,918.82.

On September 16, 2010, Judge Gray H. Miller granted NatureBest's motion for summary judgment and denied Appellants' motion for summary judgment.  Relying solely on the 2002 stock purchase agreement, the district court concluded that Herr and Petro are liable under PACA because, even if they

No. 10-20788

did not have actual control of the PACA trust assets, they were shareholders in a position to control those assets and failed to preserve them. On October 1, 2010, final judgment was entered on behalf of NatureBest and against Herr and Petro in the amount of $8,918.82.

Herr and Petro brought the instant appeal, asserting that they are not liable under PACA because they did not have actual control or dominion over the trust assets.

## II.

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the trial court. *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

## III.

"PACA regulates the produce industry and promotes fair dealings in transactions involving fruits and vegetables. Under the Act, when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities." *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (citation omitted). "We have recognized that PACA is a 'tough law[.]'" *Id.* at 351 (quoting *Hawkins v. Agric. Mktg. Serv.*, 10 F.3d 1125, 1130 (5th Cir. 1993)). "In addition to protecting consumers, Congress expressly designed it to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business

acumen and fair dealing." *Id.* "An investor in a perishable commodities corporation 'should know at the beginning of his association with such a corporation that he is buying into a corporation which is strictly regulated by the federal government through PACA.'" *Id.* (quoting *Hawkins*, 10 F.3d at 1131).

> PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities. If, however, the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.  Thus, . . . individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA.

*Id.*

"Ordinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997) (citing *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1996)).  A shareholder "may not escape liability based on a real or claimed failure to exercise his right and obligation to control the company." *Golman-Hayden*, 217 F.3d at 351.

In its summary judgment analysis, the district court relied solely on the 2002 stock purchase agreement, which granted Herr and Petro authority over certain business and financial matters and entitled them to sit on the company's board of directors.  Although Herr and Petro assert that they never assumed the responsibility they were entitled to under the agreement, our precedent makes clear that they remain liable for a breach of fiduciary duty so long as they were in a position to control the PACA trust assets, which are the agricultural commodities and the proceeds therefrom.  7 U.S.C. § 499e(c)(2).  It is established that a shareholder may not avoid liability under PACA merely by failing to assume responsibilities that he is entitled to.  *Golman-Hayden*, 217 F.3d at 351.

No. 10-20788

Accordingly, summary judgment was appropriate because, based on the evidence of their stock purchase alone, there is no genuine issue as to the Appellants' legal authority to control the trust assets.

Herr and Petro insist that there should not be liability under PACA merely because someone is a shareholder of an agricultural commodities dealer. This interpretation is consistent with the case law in this area. *See, e.g., Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F. Supp. 703, 706 (E.D. Pa. 1994) ("[Individuals] are not secondarily liable merely because they served as corporate officers or shareholders."). However, the district court's conclusion did not rest solely on the Appellants' status as shareholders; rather, the summary judgment evidence established that Herr and Petro had the contractual authority and ability to control the trust assets, yet they failed to protect those assets. *See Golman-Hayden*, 217 F.3d at 350 n.12 (approving of the *Shepard* court's reasoning that "permitting the corporation's manager to operate the PACA-regulated business, which the individual shareholders established and for which they were legally responsible, apparently without oversight to ensure that PACA creditors were paid, was not reasonable under common law breach of trust principles").

PACA is designed to protect agricultural producers who, because of the nature of their industry, must rely on assurances of payment from dealers following the dealers' receipt of their commodities. This purpose would be thwarted by permitting individual shareholders to avoid liability by refusing to protect trust assets over which they had the authority.

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment.

5