# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2024

Lyle W. Cayce
Clerk

———————

No. 23-50757

———————

A & A CONCEPTS, L.L.C., *a Texas Corporation*; WILLSON DAVIS COMPANY, *a Texas Corporation*,

*Plaintiffs—Appellants*,

AVOCADO LOVE MARKETING, L.L.C.,

*Intervenor Plaintiff—Appellant*,

*versus*

LEONIDEZ FERNANDEZ, JR.,

*Defendant/Intervenor Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-1223

———————————————————————

Before SMITH, WIENER, and DOUGLAS, *Circuit Judges*.

DANA M. DOUGLAS, *Circuit Judge*:

Plaintiffs-Appellants are a group of produce suppliers who sold produce to Defendant Lonestar Produce Express, LLC, a produce broker. Lonestar was opened by Defendants Leonidez Fernandez, III, and Eric Fernandez, the sons of Defendant Leonidez Fernandez, Jr., in 2015. For the Fernandezes, produce was a family affair—Leonidez and Eric learned about

the industry from their father, and Leonidez Fernandez, Jr. learned about the industry from his father. Thus, when Leonidez and Eric started Lonestar, their father frequently assisted them. Leonidez Fernandez, Jr. would work at Lonestar and even reach out to old business colleagues to see if Lonestar could purchase produce from them. This case asks—how much help from dad is too much?

Over time, Lonestar experienced financial difficulty and owed roughly $221,000 by mid-2019 to Plaintiffs-Appellants in due and owing produce invoices. Thus, Plaintiffs-Appellants sought relief under the Perishable Agricultural Commodities Act ("PACA"). PACA requires produce buyers to hold either the produce, or all of the proceeds from the subsequent sale of the produce, in trust for the benefit of the unpaid suppliers until full payment has been received by the suppliers. PACA liability attaches first to the merchant, dealer, or broker—here, Lonestar. If, however, the assets of the merchant are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust. Under this secondary liability regime, it is well established that an individual shareholder, officer, or director of a corporation, or managing member of an LLC, who was in a position of control over the trust assets, and who breached his fiduciary duty to preserve those trust assets may be held secondarily liable under PACA.

But the instant case presents an issue of first impression in our circuit: whether individuals who are *not* named as members of an LLC (or shareholders, officers, or directors of a corporation) may be held secondarily liable. We hold that these individuals may be held secondarily liable when the facts demonstrate that the individual maintains some control over the PACA trust assets. Although the district court erred in finding Leonidez Jr. could not be held secondarily liable because he lacked the requisite title of

No. 23-50757

LLC member, the record supports a finding that Leonidez Jr. lacked the requisite control over the PACA trust assets. Accordingly, we AFFIRM.

I

A

Plaintiffs-Appellants A & A Concepts, LLC ("A&A") and Willson Davis Company ("Willson Davis"), and Intervenor-Plaintiff Avocado Love Marketing, LLC ("Avocado Love") (collectively, "Plaintiffs-Appellants") brought suit against Defendants Leonidez Fernandez, III ("LF III"), Eric Fernandez ("EF"), Leonidez Fernandez, Jr. ("LF Jr."), and Lonestar Produce Express, LLC ("Lonestar"). LF Jr. is the former owner of Fernandez Produce Express ("Fernandez Produce"). LF III and EF, the sons of LF Jr., started Lonestar, a produce company, in 2015. LF Jr. had been in the produce industry for thirty to forty years and taught his sons about the produce industry from an early age.

In 2019, Lonestar began experiencing financial hardship, failing to pay a total of $220,958.36 due and owing produce invoices. As a result of Lonestar's failure to pay, Plaintiffs brought suit on October 14, 2019, against Defendants under PACA. On July 2, 2020, Plaintiff-Intervenor Avocado Love filed its intervening complaint. On October 21, 2022, Plaintiffs reached settlement with Defendants Lonestar, LF III, and EF. Accordingly, the sole issue at trial was Defendant LF Jr.'s individual liability pursuant to the PACA trust provisions.

The district court held a bench trial on July 31, 2023. On September 25, 2023, the district court entered its Findings of Fact and Conclusions of Law from the one-day bench trial.

3

No. 23-50757

B

The district court's findings of fact, in relevant part, are as follows.[1] Lonestar was a produce company that engaged in the buying and selling of wholesale quantities of perishable agricultural commodities. Lonestar was founded by LF III and EF, LF Jr.'s sons. Lonestar's certificate of formation was filed in the Office of the Secretary of State of Texas on June 15, 2015. LF III and EF started doing business as Lonestar in 2016.

LF Jr. is a former owner of Fernandez Produce, but he sold his interest in Fernandez Produce to his brother in 2016 or 2017. LF Jr. was not a member, manager, or employee of Lonestar. Rather, LF III and EF are the only members of Lonestar.

When LF Jr. left Fernandez Produce, he had a good reputation in the produce industry. He initially contacted Jeff Cox, the manager of Avocado Love, about Lonestar's purchasing produce from Avocado Love. LF Jr. also spoke with a part owner of A&A about the same. A&A understood LF Jr. to be involved with Lonestar to the extent that LF Jr. would be financially accountable for Lonestar.[2] However, LF Jr. never told Appellants that he owned, was a member of, or otherwise had any official control over Lonestar. And as a factual matter, the district court found LF Jr. did not have the authority to direct payment of Lonestar's operating funds; was not an authorized signatory to its bank account; and did not sign any checks on Lonestar's account. Nor did he contribute financially to the start of Lonestar.

_____

[1] On appeal, Plaintiffs-Appellants do not challenge any of the factual findings made by the district court. We thus accept these facts as true in conducting our review.

[2] For example, the record shows that vendors "relied on [LF Jr.'s] reputation in the produce industry," and "believed. . . his experience in the produce business was going to help guide his sons," even extending produce on credit based on this reputation and experience.

4

No. 23-50757

Based on these factual findings, the district court held that it has jurisdiction over the matter pursuant to 28 U.S.C. § 1331. Second, the district court described the legal test for PACA liability. PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities. However, if the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA trust liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust. To hold an individual secondarily liable under PACA, the district court outlined that "the individual must (1) be an individual shareholder, officer, or director of the corporation—or *managing member of the LLC*; (2) who was in control of or in a position of control over the trust assets; and (3) who breached his fiduciary duty to preserve those trust assets." The district court further explained that a shareholder, officer, director, or managing member may not avoid liability under PACA by failing to assume responsibilities.

Applying the law to the facts, the district court concluded that because LF Jr. "was not a member of [Lonestar] and because he was not authorized on [Lonestar]'s accounts, [LF Jr.] was not in control of or in a position to exercise control over [Lonestar] or the PACA trust assets." "Because [LF Jr.] had no control over [Lonestar]'s accounts or expenditures, he was not entitled to assume [Lonestar]'s responsibility to direct payment of or preserve the PACA trust assets." The district court held LF Jr. "did not owe a fiduciary duty to [Plaintiffs-Appellants] under PACA," and therefore, he "is not liable under PACA for the debts of [Lonestar]."

On appeal, Plaintiffs-Appellants do not ask this court to review the district court's findings of fact. Instead, Plaintiffs-Appellants raise issues only as to the district court's conclusions of law.

5

No. 23-50757

## II

When reviewing findings of fact and conclusions of law entered after a bench trial, "findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020). We review "conclusions of law and mixed questions of law and fact de novo." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009). "We review a district court's construction and application of a statute de novo." *United States v. DeCay*, 620 F.3d 534, 537 (5th Cir. 2010); *see also Pac. Int'l Mktg., Inc . v. A & B Produce, Inc.*, 462 F.3d 279, 282 (3d Cir. 2006) ("We review the district court's interpretation of PACA on a de novo basis.").

## III

### A

PACA is "a Depression-era statute designed to protect sellers of perishable produce from delinquent purchasers." *Matter of Delta Produce, L.P.*, 845 F.3d 609, 612 (5th Cir. 2016). We have previously explained PACA's history in detail:

> The short lifespan of produce makes it a risky business. It has been described as an industry "engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous." Sellers "must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." Congress thus enacted PACA in 1930 to regulate and "promote fair dealing in the sale of fruits and vegetables," in part by making it a violation of federal law for buyers of perishable commodities to "fail . . . to make full payment promptly" to sellers.

> In 1984, Congress strengthened the protections of the Act by requiring buyers—often brokers that purchase the produce from farmers and then sell it to grocery stores or restaurants— to hold either the produce or all proceeds or accounts receivable from a subsequent sale of the produce in trust for the benefit of unpaid suppliers until "full payments of the sums owing in connection with such transactions has been received by" the supplier. These amendments were modeled after the statutory trust provisions that Congress added to the Packers and Stockyards Act of 1976, so courts have often looked to those "parallel" provisions when interpreting PACA's trust provisions.

*Id.* at 612-13 (internal citations omitted).

In the early days of PACA, liability was limited to corporations and LLCs. However, in the 1980s and 1990s, courts around the country began to conclude that "individuals associated with corporate defendants may be liable under a PACA trust theory." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). This conclusion was quickly unanimously accepted. *See Six L's Packing Co., Inc. v. Beale*, 524 F. App'x 148, 156 (6th Cir. 2013) (noting that "our sister circuits unanimously agree PACA imposes individual liability on corporate officers, shareholders, and others, to the extent that they control the trust assets," and collecting cases).

Now, it is clear that "PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities." *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000). "If, however, the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id.* It is also clear that "individual shareholders, officers, or directors of a corporation who are in a

position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." *Id.*

Turning to our circuit, we first considered individual liability in *Golman-Hayden Co., Inc. v. Fresh Source Produce Inc.* In *Golman-Hayden*, the plaintiffs sought to hold the sole shareholder of the defendant company liable under PACA. *Id.* at 350-51. The defendant argued that PACA liability cannot attach to him as an individual, and even so, he was a "passive shareholder" and thus should not be liable because he lacked actual involvement with the company. *Id.* at 351. Recognizing that individual liability was an issue of first impression in our circuit, the district court relied on out-of-circuit case law for guidance: specifically, *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F. Supp. 703 (E.D. Penn. 1994), and *Sunkist Growers, Inc. v. Fisher*, 104 F.3d at 283.

In *Shepard v. K.B. Fruit & Vegetable, Inc.*, the United States District Court for the Eastern District of Pennsylvania held that PACA liability "attaches first to the licensed seller of perishable agricultural commodities." 868 F. Supp. at 706. However, "[i]f the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Id.* The court recognized that, under this scheme, individuals are not liable merely because they served as corporate officers or shareholders; instead, their involvement must be "sufficient to establish legal responsibility." *Id.*

In *Sunkist*, the Ninth Circuit, as the first circuit to consider the issue, held that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." 104 F.3d at 283. In reaching its conclusion, the Ninth Circuit considered numerous district court opinions finding personal liability under PACA. *Id.*

at 282-83; *see Frio Ice v. SunFruit, Inc.*, 724 F. Supp. 1373, 1381-82 (S.D. Fla. 1989); *Shepard*, 868 F. Supp. at 706; *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F. Supp. 209, 211 (E.D.N.Y. 1993); *In re Zois*, 201 B.R. 501, 507 (Bankr. N.D. Ill. 1996).   The Ninth Circuit determined that "[t]he unanimous conclusion of the cases is that . . . '[i]f the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.'" *Id.* at 283 (quoting *Shepard*, 868 F. Supp. at 706).

The district court in *Golman-Hayden* thus adopted the Ninth Circuit's holding in *Sunkist*: that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Id.* at 350.   Considering the similarities between the facts of *Golman-Hayden* and *Shepard*, the district court also found persuasive the *Shepard* court's reasoning with respect to individual shareholders: that individual shareholder liability should be based on two factors—(1) "whether the individuals' involvement with the corporation was sufficient to establish legal responsibility;" and (2) "whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors." *Id.* The district court granted summary judgment, finding the defendant was the sole shareholder of the defendant company and was sufficiently involved in the corporation to control its assets, thus establishing liability under PACA. *Id.* at 350-51.

On appeal, we first considered the issue of individual liability under PACA.  *Id.* at 351-52.  We "join[ed] our colleagues in the Ninth Circuit and [held] that individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty

to preserve those assets, may be held personally liable under PACA." *Id*. at 351. We stated that this conclusion was "consistent with the intent of Congress in establishing the statutory trust provisions of PACA." *Id*. In addition, we rejected the defendant's argument that he may "escape liability based on a real or claimed failure to exercise his right and obligation to control the company." *Id*. We found that the shareholder "manifestly had absolute control of the corporation." *Id*. And thus, "his refusal or failure to exercise any appreciable oversight of the corporation's management was a breach of his fiduciary duty to preserve the trust assets." *Id*. Accordingly, we affirmed the district court's holding that the sole shareholder was secondarily liable under PACA and adopted the test outlined by the Ninth Circuit in *Shepard*. *Id*. at 351-52. We affirmed this holding in *Bocchi Americas Associates Inc. v. Commerce Fresh Marketing, Inc.*, 515 F.3d 383 (5th Cir. 2008), stating "PACA imposes secondary liability on *persons who are in a position to control the trust assets* and fail to do so." *Id.* at 388 (emphasis added).

Shortly after, we clarified that, although shareholders cannot escape liability based on failure to exercise oversight, it is also true that shareholders are not secondarily liable merely because they are shareholders. *Ruby Robinson Co., Inc. v. Herr*, 453 F. App'x 463, 465 (5th Cir. 2011) (citing Shepard, 868 F. Supp. at 706) (unpublished). Instead, the analysis must consider "the contractual authority and ability to control the trust assets" and the subsequent "fail[ure] to protect those assets." *Id*. at 466. We made clear that it is not one's title that matters but the authority held by the shareholder and the obligation that followed from that authority. *See id*. We affirmed the district court, holding that the summary judgment evidence was clear that the shareholder defendants "had the contractual authority and ability to control the trust assets, yet they failed to protect those assets." *Id*. at 465-66 (emphasis added). And most recently in *Iscavo Avocados USA, L.L.C. v. Pryor*, we affirmed our previous holdings, finding that an officer and

shareholder was individually liable under PACA even though his partner handled all business dealings. 953 F.3d 316, 319 (5th Cir. 2020). We held this is so because the officer/shareholder "had the authority to ensure . . . [the] trust assets were preserved for the beneficiaries of the PACA trust, but he refused to exercise that authority." *Id.*

## B

As illustrated above, cases on PACA individual liability largely deal with individual defendants who are shareholders, officers, or directors of a corporation. While this makes sense, as these individuals are most likely to control trust assets, these individuals are not the only ones who may be able to control PACA trust assets. Turning to the question before us—whether individuals who are not shareholders, officers, or directors of a corporation, nor members of an LLC, can nonetheless be secondarily liable under PACA for their role in dissipating the PACA trust assets—we are presented with a circuit split.

In 2013, the United States Court of Appeals for the Sixth Circuit decided *Six L's Packing Co., Inc. v. Beale*, holding that PACA secondary liability does not extend beyond individuals who are specifically owners, officers, or directors of a corporation. 524 F. App'x 148, 156 (6th Cir. 2013). In *Beale*, the district court held that the defendant, who was not a shareholder, officer, or director of the company, was personally liable under PACA, as "he was in a position to control the assets of the PACA trust and failed to preserve them." *Id.* (internal quotation marks omitted). On appeal, the Sixth Circuit noted that "[i]ndividual liability in the PACA context is not derived from the statutory language, but from common law breach of trust principles." *Id.* With these trust principles in mind, the Sixth Circuit summarized that "our sister circuits unanimously agree PACA imposes individual liability on corporate officers, shareholders, and others, to the extent that they control the trust assets." *Id.* However, the Sixth Circuit

resisted the opportunity to extend PACA liability to individuals who are not shareholders, officers, or directors of a corporation. *Id.* The Sixth Circuit reasoned that, while it agreed that "certain classes of individuals face personal liability as trustees under the Act, we cannot agree with [the district court's] conclusion that [the defendant] falls into that class." *Id.*

On the other hand, in 2021, the United States Court of Appeals for the Second Circuit held that an individual "who is not an owner, officer, or director of the dealer may nonetheless have secondary PACA liability if he had control over the dealer's dissipated assets," in the case of *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). In *Yadid*, the Second Circuit determined that its conclusion was "consistent with the general principle applied" in other PACA cases. *Id.* at 877. The Second Circuit concluded that, although in most cases, "individual defendants have in fact been the shareholders or officers of the dealer, the dispositive focus has generally been on whether the individual had control over the preservation or disposition of the dealer's assets." *Id.* at 876. The court went on to consider whether the individual had control over the dissipated assets. *Id.* at 877. The court found that the individual had exercised the requisite control over certain assets and held him secondarily liable for the dissipation of those assets. *Id.* at 882.

C

Before us, Plaintiffs-Appellants argue that the district court committed a manifest, reversible error of law by holding that individual liability under PACA applies only to managing members of LLCs. Instead, Plaintiffs-Appellants contend that liability should attach based on "whether the individual had control and authority in fact over the PACA trust assets, not the individual's corporate designation or bank account signatory status."

Defendant-Appellee contends that the district court applied the appropriate test. Even so, Defendant-Appellee argues that LF Jr. would not be held liable under either test because "the evidence and testimony presented at trial simply does not show that L. Fernandez Jr. had a position at Lonestar Produce during the relevant time, or that he had any control, actual or otherwise, over the Lonestar Produce PACA trust assets."

We agree with Plaintiffs-Appellants that secondary liability under PACA should extend beyond those named as members of an LLC. Even so, the district court record demonstrates that Plaintiffs-Appellants have nonetheless failed to establish that LF Jr. should be secondarily liable on the facts of this case. In reaching this holding, we adopt the approach taken by the Second Circuit in *Yadid* and conclude that the proper question asks whether an individual is in a position to control the trust assets, not whether that individual holds a particular title.

Our position is supported by our own and the great weight of PACA caselaw. Although in *Golman-Hayden*, though we adopted the *Sunkist* test, our focus was on the authority of the shareholders. We held that the critical elements for shareholder liability are: (1) "whether the individuals' involvement with the corporation was sufficient to establish legal responsibility;" and (2) "whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors." 217 F.3d at 350 (emphasis added). Likewise, the district court's key finding was that the sole shareholder of the defendant company was able to control the company's assets. *Id*. at 350-51; *see also Iscavo Avocados*, 953 F.3d at 319 (holding the officer/shareholder was liable because he "had the authority to ensure . . . [the] trust assets were preserved for the beneficiaries of the PACA trust, but he refused to exercise that authority"); *Ruby Robinson*, 453 F. App'x at 465-66 (holding that shareholders are not secondarily liable merely because they are shareholders,

instead considering "the contractual authority and ability to control the trust assets" and the subsequent "fail[ure] to protect those assets"); *Bocchi*, 515 F.3d at 388 ("PACA imposes secondary liability *on persons who are in a position to control the trust assets* and fail to do so.") (emphasis added).

Moreover, as the Second Circuit discussed in *Yadid*, individuals who are not owners, officers, or directors of a PACA dealer may nonetheless have secondary liability. 999 F.3d at 877. The Second Circuit found this outcome to be "consistent with the general principle applied" in other PACA cases— that "the dispositive focus has generally been on whether the individual had control over the preservation or disposition of the dealer's assets." *Id*. at 876-77.

Plaintiffs-Appellants rely heavily on the Third Circuit's decision in *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163 (3d Cir. 2010). In *Bear Mountain*, the Third Circuit held that the liability of a fifty percent shareholder "turn[ed] not on whether she nominally held an officer (or, if argued, director) position, nor even the size of her shareholding, but whether she had the authority to direct the control of (i.e., manage) PACA assets held in trust for the producers." 623 F.3d 163, 169 (3d Cir. 2010). The court considered a mom-and-pop wholesale produce dealer owned by a husband and wife—Mr. and Mrs. Fleisher. *Id*. at 168. At issue on appeal was whether Mrs. Fleisher, as a fifty percent shareholder, could be secondarily liable under PACA, even though she did not possess the power to manage the PACA trust assets. *Id*. at 169-70. The Third Circuit considered the "temptingly simple approach" of applying a bright-line, title-focused rule: that if an individual was a shareholder, officer, or director of the corporation, then "she is by that fact in a position to control the PACA trust assets." *Id*. at 171. However simplistic this approach may have been, the Third Circuit "reject[ed] it in favor of an approach that is more sensitive to how each

corporation is actually managed," concluding "context should matter in these circumstances." *Id.*

*Bear Mountain* considered the weight of authority from other circuits—namely *Sunkist* and *Golman-Hayden*. *Id*. at 171-72. It concluded that "[t]aken together, these cases suggest a test . . . that takes into account formal position(s) but relies primarily on context." *Id*. at 172. As the court made clear, the "ability to control is core," especially in "mom and pop" companies where "formalities may be less meaningful." *Id*. Though the Third Circuit considered the inverse situation we face today—considering whether an individual who indeed holds a title to a corporation is nonetheless able to control the PACA trust assets—the principles are nonetheless applicable to the instant issue and help guide our decision.

Finally, an analysis that considers whether an individual exercises control over the PACA trust assets, regardless of formal title, is in line with PACA case law in other contexts. *See, e.g., Matter of Delta Produce*, 845 F.3d 609, 620 (5th Cir. 2016) (noting that those who owe fiduciary duties to the PACA claimants may be "PACA trustees or their functional equivalents); *Williamsport Purveyors Inc. v. U.S. Dep't of Ag.*, 916 F.2d 82, 84 (3d Cir. 1990) (holding that an executor had de facto control of the company and thus finding that the executor was an "officer" within the meaning of 7 U.S.C. § 499d(d)(a)."); *In re Passarell*, No. 14-10881 K, 2019 WL 7945833, at *3 (W.D.N.Y. Br. Aug. 23, 2019) ("When an unpaid seller of produce seeks to hold . . . a partner in a partnership that is a PACA merchant liable for produce sold to it, and such an individual denies personal liability and seeks to hide behind the business form, the arguments obviously turn to indicia of control."); *Classic Harvest LLC v. Freshworks LLC*, No. 1:15-cv-2988-WSD, 2017 WL 5026697, at *7 (N.D. Ga. Nov. 3, 2017) (considering whether an entity was a de facto "controlling person" of a company's PACA trust assets but holding the allegations insufficient to state a claim against the company).

Taking together our own precedent, the Second Circuit's well-reasoned decision in *Yadid*, the Third Circuit's rejection of a title-based test, and the weight of authority on PACA secondary liability, we hold that individuals who are not managing members of an LLC may nonetheless be held secondarily liable under PACA. Those individuals who are able to control the trust assets have fiduciary duties to preserve those assets; those not in a position to preserve those assets have no resulting duty. Thus, it is possible that an individual without an official title may nonetheless have assumed a duty to preserve the trust assets when considering their role in the organization.

Turning to the instant facts, the district court concluded that "[b]ecause Defendant was not a member of [Lonestar] *and* because he was not authorized on [Lonestar's] accounts, Defendant was not in control of or in a position to exercise control over Lonestar Produce Express, LLC or the PACA trust assets." The district court's conclusion that LF Jr. could not be liable under PACA because he was not a member of the LLC was erroneous. However, Defendant-Appellee is correct that the district court's record supports the finding that LF Jr. was not "in a position to control PACA trust assets" regardless. The record does not indicate that LF Jr. had sufficient control over Lonestar to be held liable under PACA. LF Jr. did not have the authority to direct payments of Lonestar's operating funds. LF Jr. was not an authorized signatory to Lonestar's bank account. LF Jr. did not sign any checks on behalf of Lonestar. Nor did LF Jr. ever tell Appellants that he owned, was a member of, or otherwise had any official control over Lonestar. At trial, Plaintiffs-Appellants failed to demonstrate that LF Jr. had any control whatsoever over the PACA trust assets. Being unable to show that LF Jr. was "in control of or in a position to exercise control over" the PACA trust assets is dispositive and no further fact-finding is required, regardless of the district court's error.

No. 23-50757

## IV

For the foregoing reasons, we AFFIRM the decision of the district court.